## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-32352 |
| | ) | |
| CHARLES V. MILES, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Judge LaShonda A. Hunt |
| | ) | |

| | | |
|---|---|---|
| CINDY M. JOHNSON, NOT INDIVIDUALLY, BUT AS CHAPTER 7 TRUSTEE, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 20-00386 |
| | ) | |
| AMERBANK, LLC n/k/a DOLARE, LLC and MILES TECHNOLOGY SOLUTIONS, LLC n/k/a INVENTOUS, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, the Chapter 7 Trustee (the "*Trustee*"), through her special counsel, Neal H. Levin ("*Special Counsel*"), hereby alleges for her first amended complaint (the "*FAC*") against Amerbank, LLC n/k/a Dolare, LLC ("*Amerbank*") and Miles Technology Solutions, LLC n/k/a Inventous, LLC ("*Inventous*" and together with Amerbank, the "*Entity Defendants*") as follows:

### Nature of the Action

1.      This is an action seeking to adjudicate claims of Charles V. Miles (the "*Debtor*"), which include claims under the theory of breach of an express contract, implied in fact contract and implied in law contract for unpaid W-2 wages and contractor fees (the "*Property*") owed to the Debtor from the Entity Defendants based on his work as a W-2 employee, independent

contractor and CEO of the Entity Defendants pursuant to sections 541 of title 11 of the United States Code (the "*Bankruptcy Code*").

2.      Since the filing of the Debtor's bankruptcy case, the Trustee has learned of the Debtor's ploy to defraud his creditors both pre-bankruptcy during one creditor's, First American Bank ("*FAB*"), citation proceedings in the Northern District of Illinois (the "*District Court*") and continuing into this bankruptcy filing.  The Debtor admitted on over a half-dozen occasions during his Rule 2004 exam that it would be "illogical" to put businesses and accounts in his name while he owes money to creditors.

3.      The Debtor continues to stonewall in this bankruptcy case.  The Debtor formed the Entity Defendants and he held or continues to hold the position of CEO of both, which he conceived, operated and continues to operate.

4.      Inventous was created in 2012 and Amerbank was created in 2015.  Yet, the Debtor failed to fully disclose his interest in the Entity Defendants and the Property based on his work as a W-2 employee, an independent contractor and as CEO of the Entity Defendants.

5.      The Debtor's work for the Entity Defendants constitutes substantial value and the Debtor is therefore entitled to compensation.

6.      Accordingly, the Trustee seeks a finding from this Court that the Debtor's claims against the Entity Defendants regarding the Property are part of his bankruptcy estate and to further adjudicate those claims to recover the Property from the Entity Defendants in an amount to be determined at trial.

## Parties

7.      Plaintiff, Cindy M. Johnson, was appointed as the Chapter 7 Trustee in this case.

8.      Entity Defendant, Amerbank, is an Indiana limited liability company ("*LLC*") formed under the laws of Indiana on December 30, 2015, with its principal office in the City of Geneva, County of Kane, State of Illinois.

9.      Entity Defendant, Inventous, is an Indiana LLC formed on September 10, 2012, with its principal office in the City of Geneva, County of Kane, State of Illinois.  Inventous is the purported sole member of Amerbank.

## Jurisdiction and Venue

10.     This Court has subject matter jurisdiction over this adversary proceeding, which arises under the Bankruptcy Code, and arises in and relates to a case under the Bankruptcy Code, pursuant to 28 U.S.C. §§ 157 and 1334.

11.     This is a core proceeding under 28 U.S.C. § 157(b)(2).

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

13.     The statutory predicates for the relief requested herein are section 541 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## Background

14.     On November 13, 2019 (the "*Petition Date*"), the Debtor filed this bankruptcy case in the Bankruptcy Court for the Northern District of Illinois (the "*Court*") and the Trustee was appointed.

15.     Inventous was formed by the Debtor on September 10, 2012 as Miles Technology Solutions, LLC.

16.    That same day, Inventous' initial operating agreement was created.    *See* Inventous' Initial Operating Agreement, attached hereto as **Exhibit 1**.    Pursuant to that operating agreement, the Debtor was the sole manager and membership interest was divided as follows: Randolph S. Miles ("*Randy*"), the Debtor's father, held 65% interest; the Debtor held 30% interest; and the Debtor's ex-wife, Amanda Jeanne Patterson ("*AJ*") held 5% interest.

17.    However, on November 19, 2012, Inventous' operating agreement was revised just one day before the Debtor and AJ were married.    Inventous' November 19, 2012 operating agreement is attached hereto as **Exhibit 2**.    Pursuant to that operating agreement, AJ was the sole manager and owner of the entity.

18.    Upon information and belief, the Debtor had Inventous' operating agreement revised to avoid his creditors.

19.    Following the divorce of AJ and the Debtor, the Debtor now claims his sister, Audra Miles Jentel ("*Audra*") is the owner of Inventous and that his mother, Jane Miles ("*Jane*") is the Treasurer.    Accordingly, Inventous' revised operating agreement dated August 2, 2015 purports Audra to be the manager and sole owner.    Inventous' August 2, 2015 operating agreement is attached hereto as **Exhibit 3**.

20.    However, Inventous has always been the Debtor's company and has always been under his control.

21.    The Debtor provided substantial services for Inventous since its inception in 2012 with the understanding he would be compensated for his services.

22.    Subsequently, Amerbank was formed by the Debtor on December 30, 2015.

23.    The Debtor also provided substantial services for Amerbank since its inception in 2015 with the understanding he would be compensated for his services.

24.     Amerbank's articles of organization were signed by the Debtor and he was listed as the registered agent.

25.     The Debtor claims Audra is the owner of Amerbank and that Jane is the Treasurer.  The initial and revised operating agreements, however, indicate that the sole member of Amerbank is Inventous.

26.     According to Amerbank's website as of May 31, 2018, the Debtor was its "Founder, CEO and Director" and Randy, was its "Chairman."  *See* May 31, 2018 Amerbank Screenshot attached hereto as **Exhibit 4**.

27.     The Debtor was working for Amerbank during the first half of 2018 and traveled internationally to find clients.  *See* Select Pages of Jane's Rule 2004 Exam Transcript, attached hereto as **Exhibit 5**, at 75:13-76:12.

28.     Inventous is purportedly in the business of developing software designed to automate foreign bank transfers to the United States.

29.     Amerbank is purportedly in the business of assisting offshore businesses with facilitating wire transfers to banks in the United States.

30.     Neither Audra nor Jane have any knowledge of nor experience in any of the business activities being undertaken by either Entity Defendant.

31.     In August 2018, Amerbank was issued cease and desist letters from different states for operating without money services licensing.

32.     That same month, and a day after FAB issued its citation to discover assets to the Debtor in the District Court, Amerbank re-branded itself as Dolare, LLC.

33.     Despite Amerbank's run-in with State Regulatory agencies, it sold money services to various foreign individuals and entities, received transfers of significant foreign

currency from said foreign individuals and entities and would convert those funds to U.S. dollars.

34.     On information and belief, this was a method of moving funds on-shore for foreign nationals while circumventing certain regulatory requirements for the movement of said money.  At certain times, Amerbank was in possession of monies in excess of $10,000,000 in various accounts in Amerbank's name.

35.     The Debtor was very involved in the day-to-day operations of the Entity Defendants and in contact with everyone, even while overseas.

36.     There are e-mails on March 7, 2018 between former Amerbank employee, Stephen Coburn and Amerbank employee/general counsel Richard Ehrenreich ("*Ehrenreich*") discussing the Debtor's work for Amerbank and communications with its employees while he was out of the country.  *See* Amerbank E-mails, attached hereto as **Exhibit 6**.

37.     Upon information and belief, the Debtor was an independent contractor for Amerbank until May of 2018, when he became a W-2 employee once FAB began to pursue the Debtor in post-judgment proceedings in the District Court.  *See* Select Pages of the Debtor's Citation Exam Transcript, attached hereto as **Exhibit 7**, at 11:3-11:6 and 14:19-15:11.  Yet, the Debtor claims he was not paid any additional wages by Amerbank since the one garnishment check FAB received in early 2019 for $605.76.

38.     The Debtor has affirmed that prior to May 2018 he was working for Amerbank, holding the position of CEO.  *See id.* at 21:9-21:24.

39.     Upon information and belief, the Debtor has only been paid by Inventous as a 1099 employee.

40.     During his citation exam, the Debtor stated that he received 1099 income from Inventous from 2014 through 2017, with the most being a little over $20,000 in 2017, and the prior years being less than $20,000. *See id.* at 15:15-16:21.

41.     He also stated during his citation exam that he does not recall ever receiving a salary from Inventous. *See id.* at 15:12-15:14.

42.     According to his Statement of Financial Affairs, for the year 2017, he received $27,106.99. *See* ECF No. 1, at 40.

43.     For the year 2018, he received $18,846. *See id.*

44.     For the year 2019, he received $695. *See id.* at 39.

45.     When asked about the source of his 2017 income during his 341 exam, the Debtor stated it was mainly 1099 income from Inventous. *See* Select Pages of the Debtor's 341 Exam Transcript, attached hereto as **Exhibit 8**, at 45:24-46:9.

46.     When asked about the source of his 2018 income during his 341 exam, the Debtor said it was mainly W-2 compensation from Amerbank. *See id*. at 46:10-46:17.

47.     The Debtor claimed during his citation exam that he stopped formal work for Inventous in November 2018. *See* Debtor's Citation Exam Transcript (Exhibit 7), at 13:4-13:18.

48.     When asked about the source of his 2019 income during his 341 exam, the Debtor stated it was mainly from donating plasma and that some was from child care at his church. *See* Debtor's 341 Exam Transcript (Exhibit 8), at 45:3-45:22.

49.     While the above illustrates evidence of the Debtor receiving *some* money from the Entity Defendants, it is clear that he has not been paid a commensurate amount of compensation for his CEO positions, W-2 wages and contractor fees.

50.     What's more, his evasiveness has made it impossible for the Trustee to know what he was paid for and why; though per his own admission and that of others, he certainly was not paid anything close to the amounts he may have declared as due and owing.

51.     For example, according to an Amerbank memorandum in 2018 regarding how to treat $200,000 of its investor's funds that were later used to fund Audra's personal residence, Ehrenreich recommended classifying $125,000 of the funds as compensation for the Debtor's CEO position in 2017.

52.     Yet, in 2017, the Debtor reported only $27,106.99 in income that he stated was based on 1099 income from Inventous.  In 2018, he reported only $18,846 income based on W-2 wages from Amerbank.  Finally, in 2019, he reported no income from either Entity Defendant.

53.     Accordingly, the Debtor was insufficiently paid and did not fully disclose his unpaid W-2 wages and contractor fees from the Entity Defendants in his bankruptcy schedules. Such Property is an asset of his bankruptcy estate.

## COUNT I
## Property of the Estate
## 11 U.S.C. § 541
## (Against Inventous)

54.     The Trustee realleges and incorporates the allegations in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.     Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

56.     Inventous failed to sufficiently pay the Debtor for his work as an independent contractor and as CEO of the company.

57.     The Debtor therefore has claims against Inventous under state law to recover the outstanding amounts owed to him.

58.     The Debtor holds claims against Inventous under Illinois law pursuant to theories under breach of an express contract, implied in fact contract and/or implied in law contract.

59.     The claims against Inventous have been owned by the Debtor since the Petition Date.

60.     The Debtor's claims against Inventous constitute property of the estate within the meaning of section 541 of the Bankruptcy Code.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Inventous as to Count I and enter an order:

a) Finding that the claims against Inventous regarding the Property is property of the estate; and

b) Granting any other relief that this Court deems just and proper.

**COUNT II**
**Property of the Estate**
**11 U.S.C. § 541**
**(Against Amerbank)**

61.     The Trustee realleges and incorporates the allegations in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

62.     Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

63.     Amerbank failed to sufficiently pay the Debtor for his work as a W-2 employee, independent contractor and as CEO of the company.

64.     The Debtor therefore has claims against Amerbank under state law to recover the outstanding amounts owed to him.

65.     The Debtor holds claims against Amerbank under Illinois law pursuant to theories under breach of an express contract, implied in fact contract and/or implied in law contract.

66.     The claims against Amerbank have been owned by the Debtor since the Petition Date.

67.     The Debtor's claims against Amerbank constitute property of the estate within the meaning of section 541 of the Bankruptcy Code.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Amerbank as to Count II and enter an order:

a)  Finding that the claims against Amerbank regarding the Property is property of the estate; and

b)  Granting any other relief that this Court deems just and proper.

## COUNT III
## <u>Breach of Express, Oral Contract</u>
### Under Illinois law
### (Against Inventous)

68.     The Trustee realleges and incorporates the allegations in paragraphs 1 through 60 of this FAC as if fully set forth herein.

69.     Around 2012, the Debtor and Inventous entered into an oral contract.

70.     Pursuant to the contract, the Debtor orally offered to work as an independent contractor for Inventous and perform services as its CEO.

71.     Pursuant to that contract, Inventous accepted the Debtor's services and in exchange orally agreed to pay the Debtor as an independent contractor for his work for Inventous and as its CEO.

72.    The Debtor performed all conditions on his part under the terms of the contract.

73.    Inventous did not fulfill the contract on its part and therefore breached the contract by failing to fully pay the Debtor all contractor fees he is owed pursuant to the contract.

74.    The Debtor is entitled to recover from Inventous all outstanding amounts owed to him under Illinois law.

75.    As a direct and proximate cause of Inventous' breach, the Debtor has been damaged in an amount to be determined at trial.

76.    The Trustee stands in the shoes of the Debtor for his claim against Inventous and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Inventous as to Count III and enter an order:

a)  Entering a judgment in favor of the Trustee and against Inventous in the amount to be determined at trial for Inventous' breach of the oral contract, including pre-judgment and post-judgment interest;

b)  Turning over the amount owed to the Debtor by Inventous to the Trustee as part of his bankruptcy estate; and

c)   Granting any other relief that this Court deems just and proper.

### COUNT IV
### **Breach of Express, Oral Contract**
### Under Illinois law
### (Against Amerbank)

77.    The Trustee realleges and incorporates the allegations in paragraphs 1 through 53 and paragraphs 61 through 67 of this FAC as if fully set forth herein.

78.    At the end of 2015, the Debtor and Amerbank entered into an oral contract.

79.     Pursuant to the contract, the Debtor orally offered to work as an independent contractor for Amerbank and perform services as its CEO.

80.     Pursuant to that contract, Amerbank accepted the Debtor's services and in exchange, orally agreed to pay the Debtor as an independent contractor for his work for Amerbank and as its CEO.

81.     Sometime prior to May 2018, the Debtor and Amerbank amended the oral contract.

82.     Amerbank orally agreed to start paying the Debtor as a W-2 employee instead of an independent contractor and to continue paying him for his work as CEO of Amerbank.

83.     The Debtor orally agreed to work as a W-2 employee of Amerbank and continue his work as CEO of the company in return for compensation.

84.     However, according to the Debtor, he only received one check in early 2019 for $605.76 as W-2 employee of Amerbank.

85.     The Debtor performed all conditions on his part under the terms of the initial and amended contract.

86.     Amerbank did not fulfill the contract on its part and therefore breached the contract by failing to fully pay the Debtor all contractor fees and wages he is owed pursuant to the initial and amended oral contract.

87.     The Debtor is entitled to recover from Amerbank all outstanding amounts owed to him under Illinois law.

88.     As a direct and proximate cause of Amerbank's breach, the Debtor has been damaged in an amount to be determined at trial.

89.     The Trustee stands in the shoes of the Debtor for his claim against Amerbank and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Amerbank as to Count IV and enter an order:

a)  Entering a judgment in favor of the Trustee and against Amerbank in the amount to be determined at trial for Amerbank's breach of the oral contract, including pre-judgment and post-judgment interest;

b)  Turning over the amount owed to the Debtor by Amerbank to the Trustee as part of his bankruptcy estate; and

c)   Granting any other relief that this Court deems just and proper.

### COUNT V
### Breach of Contract Implied In Fact
### Under Illinois law – In the Alternative to Count III
### (Against Inventous)

90.     The Trustee realleges and incorporates the allegations in paragraphs 1 through 60 of this FAC as if fully set forth herein.

91.     Starting around 2012, the Debtor offered to performed services for Inventous by working as an independent contractor and CEO of the company.

92.     Inventous accepted the Debtor's services and in exchange, agreed to pay him certain contractor fees.

93.     As implied by the general course of dealings between Inventous and the Debtor, the Debtor would perform services for the company as an independent contractor and as its CEO and in return, Inventous would pay contractor fees to the Debtor.

94.     Compensation for services was the common understanding between the parties, which demonstrated their mutual intent to be bound.

95.    While the Debtor continued to perform these services for Inventous, the company failed to adequately pay the Debtor for such services.

96.    During his citation exam, the Debtor stated that he received 1099 income from Inventous from 2014 through 2017, with the most being a little over $20,000 in 2017, and the prior years being less than $20,000.  *See* Debtor's Citation Exam Transcript (Exhibit 7), at 15:15-16:21.

97.    During his 341 exam, the Debtor said the source of his income was mainly W-2 compensation from Amerbank.  *See* Debtor's 341 Exam Transcript (Exhibit 8), at 46:10-46:17. Accordingly, the Debtor received little or nothing from Inventous in 2018.

98.    Yet, he claimed that it was not until November 2018 that he stopped formally working for Inventous.  *See* Debtor's Citation Exam Transcript (Exhibit 7), at 13:4-13:18.

99.    Inventous breached the agreement by failing to pay all outstanding amounts owed to the Debtor by Inventous, while the Debtor continued to provide services to Inventous.

100.    As a direct and proximate cause of Inventous' breach, the Debtor has been damaged in an amount to be determined at trial.

101.    The Trustee stands in the shoes of the Debtor for his claim against Inventous and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Inventous as to Count V and enter an order:

a)    Entering a judgment in favor of the Trustee and against Inventous in the amount to be determined at trial for Inventous' breach of contract implied in fact, including pre-judgment and post-judgment interest;

b) Turning over the amount owed to the Debtor by Inventous to the Trustee as part of his bankruptcy estate; and

c) Granting any other relief that this Court deems just and proper.

**COUNT VI**
**Breach of Contract Implied In Fact**
**Under Illinois law – In the Alternative to Count IV**
**(Against Amerbank)**

102. The Trustee realleges and incorporates the allegations in paragraphs 1 through 53 and paragraphs 61 through 67 of this FAC as if fully set forth herein.

103. Towards the end of 2015, the Debtor offered to perform services for Amerbank by working as an independent contractor and CEO of the company.

104. Amerbank accepted the Debtor's services and in exchange, agreed to pay the Debtor certain contractor fees.

105. However, upon information and belief, Amerbank failed to pay contractor fees to the Debtor because he only testified to 1099 income from Inventous prior to May 2018.

106. Sometime prior to May 2018, while the Debtor continued his services for Amerbank, Amerbank agreed to start paying the Debtor as a W-2 employee instead of an independent contractor.

107. Accordingly, as implied by the general course of dealings between Amerbank and the Debtor, the Debtor would continue performing services for the company, including services as the CEO, but in return, he would now get compensated as a W-2 employee and be paid wages.

108. Being compensated for his services was the common understanding between the parties, which demonstrated their mutual intent to be bound.

109. While the Debtor continued to perform these services for Amerbank, the company failed to adequately pay the Debtor for such services.

110.    Since the Debtor was a W-2 employee of Amerbank around May 2018, he reported to the Trustee that he only received one pay check.

111.    Yet, he also claimed that the source of his $18,846 income that he reported on his bankruptcy schedules for 2018 was mainly from W-2 compensation from Amerbank.

112.    Nevertheless, Amerbank breached the agreement by failing to pay all outstanding amounts owed to the Debtor by Amerbank, while the Debtor continued to provide services to Amerbank.

113.    As a direct and proximate cause of Amerbank's breach, the Debtor has been damaged in an amount to be determined at trial.

114.    The Trustee stands in the shoes of the Debtor for his claim against Amerbank and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Amerbank as to Count VI and enter an order:

a)  Entering a judgment in favor of the Trustee and against Amerbank in the amount to be determined at trial for Amerbank's breach of contract implied in fact, including pre-judgment and post-judgment interest;

b)  Turning over the amount owed to the Debtor by Amerbank to the Trustee as part of his bankruptcy estate; and

c)  Granting any other relief that this Court deems just and proper.

### COUNT VII
### Breach of Contract Implied In Law – Unjust Enrichment
### Under Illinois law – In the Alternative to Count III
### (Against Inventous)

115.    The Trustee realleges and incorporates the allegations in paragraphs 1 through 60 of this FAC as if fully set forth herein.

116.     The Debtor performed services by working as an independent contractor and CEO of Inventous, which has enriched and benefited Inventous.

117.     The Debtor performed the services as an independent contractor and CEO of Inventous dating back to 2012 to at least 2018.

118.     Inventous voluntarily accepted the Debtor's services.

119.     While the Debtor continued to perform these services for Inventous, the company has not adequately paid the Debtor for his services.

120.     During his citation exam, the Debtor stated that he received 1099 income from Inventous from 2014 through 2017, with the most being a little over $20,000 in 2017, and the prior years being less than $20,000.  *See* Debtor's Citation Exam Transcript (Exhibit 7), at 15:15-16:21.

121.     During his 341 exam, the Debtor said the source of his income was mainly W-2 compensation from Amerbank.  *See* Debtor's 341 Exam Transcript (Exhibit 8), at 46:10-46:17. Accordingly, the Debtor received little or nothing from Inventous in 2018.

122.     Yet, he claimed that it was not until November 2018 that he stopped formally working for Inventous.  *See* Debtor's Citation Exam Transcript (Exhibit 7), at 13:4-13:18.

123.     The Debtor is entitled to recover all outstanding amounts owed to him from Inventous.

124.     There is no justification for Inventous' failure to fully compensate the Debtor for his services.

125.     There was no contract that prescribed the payment for the Debtor's services.

126.     There is no adequate remedy at law.

127.     Inventous unjustly retained the benefit of the Debtor's services for the company.

128.    Inventous' retention of this benefit was to the detriment of the Debtor because he was not sufficiently paid for all the services he provided to the company as an independent contractor and CEO of the company.

129.    Inventous' retention of the Debtor's services violates the fundamental principles of justice, equity and good conscience.

130.    It would be inequitable for Inventous to retain the enrichment from the Debtor's services without fully paying for those services.

131.    The Trustee stands in the shoes of the Debtor for his claim against Inventous and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Inventous as to Count VII and enter an order:

a)  Entering a judgment in favor of the Trustee and against Inventous in the amount to be determined at trial based on the benefit received and retained as a result of the services the Debtor provided to Inventous, including pre-judgment and post-judgment interest;

b)  Turning over the amount owed to the Debtor by Inventous to the Trustee as part of his bankruptcy estate; and

c)  Granting any other relief that this Court deems just and proper.

**COUNT VIII**
**Breach of Contract Implied In Law – Unjust Enrichment**
**Under Illinois law – In the Alternative to Count IV**
**(Against Amerbank)**

132.    The Trustee realleges and incorporates the allegations in paragraphs 1 through 53 and paragraphs 61 through 67 of this FAC as if fully set forth herein.

133.    The Debtor performed services by working as an independent contractor, a W-2 employee and CEO of Amerbank, which has enriched and benefited Amerbank.

134.    From around 2015 to May 2018, the Debtor performed services for Amerbank as an independent contractor and as its CEO.

135.    From May 2018 to the present, the Debtor has continued performing services for Amerbank as its CEO and began working as a W-2 employee of the company.

136.    Amerbank voluntarily accepted the Debtor's services.

137.    While the Debtor continued to perform these services for Amerbank, the company failed to adequately pay the Debtor for such services.

138.    Since the Debtor was a W-2 employee of Amerbank around May 2018, he reported to the Trustee that he only received one pay check.

139.    Yet, he also claimed that the source of his $18,846 income that he reported on his bankruptcy schedules for 2018 was mainly from W-2 compensation from Amerbank.

140.    Nevertheless, the Debtor is entitled to recover all outstanding amounts owed to him from Amerbank.

141.    There is no justification for Amerbank's failure to fully compensate the Debtor for his services.

142.    There was no contract that prescribed the payment for the Debtor's services.

143.    There is no adequate remedy at law.

144.    Amerbank unjustly retained the benefit of the Debtor's services for the company.

145.    Amerbank's retention of this benefit was to the detriment of the Debtor because he was not sufficiently paid for all the services he provided to Amerbank as an independent contractor, W-2 employee and CEO of the company.

146.    Amerbank's retention of the Debtor's services violates the fundamental principles of justice, equity and good conscience.

147.    It would be inequitable for Amerbank to retain the enrichment from the Debtor's services without fully paying for those services.

148.    The Trustee stands in the shoes of the Debtor for his claim against Amerbank and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Amerbank as to Count VIII and enter an order:

a)  Entering a judgment in favor of the Trustee and against Amerbank in the amount to be determined at trial based on the benefit received and retained as a result of the services the Debtor provided to Amerbank, including pre-judgment and post-judgment interest;

b)  Turning over the amount owed to the Debtor by Amerbank to the Trustee as part of his bankruptcy estate; and

c)  Granting any other relief that this Court deems just and proper.

### COUNT IX
### Breach of Implied In Law Contract – Quantum Meruit
### Under Illinois law – In the Alternative to Count III
### (Against Inventous)

149.    The Trustee realleges and incorporates the allegations in paragraphs 1 through 60 of this FAC as if fully set forth herein.

150.    The Debtor performed services as an independent contractor and CEO of Inventous to benefit the company.

151.    The Debtor performed those services for Inventous since 2012.

152.    The Debtor did not perform these services gratuitously.

153.    The Debtor reasonably expected to be compensated for his services to Inventous.

154.    In fact, during his citation exam, the Debtor stated that he received 1099 income from Inventous from 2014 through 2017, with the most being a little over $20,000 in 2017, and the prior years being less than $20,000. *See* Debtor's Citation Exam Transcript (Exhibit 7), at 15:15-16:21.

155.    Inventous accepted the Debtor's services.

156.    There was no contract that prescribed payment by Inventous for the Debtor's services.

157.    It would be unjust for Inventous to retain the Debtor's services since 2012 without full payment to the Debtor.

158.    The Debtor's uncompensated services were of measurable benefit to Inventous.

159.    The Trustee stands in the shoes of the Debtor for his claim against Inventous and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Inventous as to Count IX and enter an order:

a) Entering a judgment in favor of the Trustee and against Inventous in the amount to be determined at trial based on the reasonable value of the work the Debtor provided to Inventous, including pre-judgment and post-judgment interest;

b) Turning over the amount owed to the Debtor by Inventous to the Trustee as part of his bankruptcy estate; and

c) Granting any other relief that this Court deems just and proper.

## COUNT X
### Breach of Implied In Law Contract – Quantum Meruit
### Under Illinois law – In the Alternative to Count IV
### (Against Amerbank)

160.     The Trustee realleges and incorporates the allegations in paragraphs 1 through 53 and paragraphs 61 through 67 of this FAC as if fully set forth herein.

161.     The Debtor performed services as a W-2 employee, independent contractor and CEO of Amerbank to benefit the company.

162.     The Debtor performed the services as an independent contractor and as CEO of the company since 2015.

163.     From May 2018 to the present, the Debtor has continued performing services for Amerbank as its CEO, but began working as a W-2 employee of the company instead of an independent contractor.

164.     The Debtor did not perform these services gratuitously.

165.     The Debtor reasonably expected to be compensated for his services to Amerbank.

166.     In fact, the Debtor admitted that the source of his $18,846 income that he reported on his bankruptcy schedules for 2018 was mainly from W-2 compensation from Amerbank.

167.     However, since the Debtor was a W-2 employee of Amerbank around May 2018, he reported to the Trustee that he only received one pay check.

168.     Amerbank accepted the Debtor's services.

169.     There was no contract that prescribed payment by Amerbank for the Debtor's services.

170.     It would be unjust for Amerbank to retain the Debtor's services since 2015 without full payment to the Debtor.

171.     The Debtor's uncompensated services were of measurable benefit to Amerbank.

172.    The Trustee stands in the shoes of the Debtor for his claim against Amerbank and has the right to pursue this claim on his behalf.

**WHEREFORE**, the Trustee respectively prays that this Honorable Court find in her favor and against Amerbank as to Count X and enter an order:

a) Entering a judgment in favor of the Trustee and against Amerbank in the amount to be determined at trial based on the reasonable value of the work the Debtor provided to Amerbank, including pre-judgment and post-judgment interest;

b) Turning over the amount owed to the Debtor by Amerbank to the Trustee as part of his bankruptcy estate; and

c)  Granting any other relief that this Court deems just and proper.

Dated:  April 22, 2021                              Respectfully submitted,

                                                    **CINDY M. JOHNSON, NOT
                                                    INDIVIDUALLY, BUT AS CHAPTER 7
                                                    TRUSTEE**

                                                    By:     /s/ Neal H. Levin
                                                            One of Her Attorneys

                                                    Neal H. Levin (No. 6203156)
                                                    Shira R. Isenberg (No. 6279718)
                                                    Bianca E. Ciarroni (No. 6329550)
                                                    FREEBORN & PETERS LLP
                                                    311 South Wacker Drive, Ste. 3000
                                                    Chicago, Illinois 60606-6677
                                                    Telephone: 312.360.6000
                                                    Facsimile: 312.360.6520
                                                    E-mail: nhlevin@freeborn.com
                                                            sisenberg@freeborn.com
                                                            bciarroni@freeborn.com