**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 19bk32352 |
| Charles V. Miles, | Chapter 7 |
| Debtor. | Hon. LaShonda A. Hunt |
| Cindy M. Johnson, not individually, but as chapter 7 trustee, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 20ap00386 |
| Amerbank, LLC n/k/a Dolare, LLC and Miles Technology Solutions, LLC n/k/a Inventous, LLC, | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court for ruling after a trial on the amended adversary complaint

filed by plaintiff Cindy M. Johnson, not individually, but as chapter 7 trustee ("Trustee") of the

bankruptcy estate of debtor Charles V. Miles ("Debtor"), against defendants Amerbank, LLC

("Amerbank") n/k/a Dolare, LLC ("Dolare") and Miles Technology Solutions, LLC ("MTS")

n/k/a Inventous, LLC ("Inventous"), (collectively, "Defendants").[1]  In the complaint, Trustee

seeks both a determination that certain state law causes of action for unpaid compensation are

property of the estate under 11 U.S.C. § 541 and a judgment against Defendants on such causes

of action for turnover of the unpaid compensation under 11 U.S.C. § 542.

---

[1] *Johnson v. Amerbank,* et al. *(In re Miles)*, Adv. Pro. No. 20ap00386 (Bankr. Case. No. 19bk32352), Am. Compl., Dkt. No. 31 (Bankr. N.D. Ill.).  References to the docket in this adversary proceeding will be to "Dkt. No."

For the following reasons, the Court concludes that the causes of action are property of the estate, but Trustee has failed to establish that she is entitled to judgment on any of them. Accordingly, judgment will be entered for Trustee and against Defendants on Counts I and II, and judgment will be entered against Trustee and for Defendants on Counts III through X.

## **PROCEDURAL HISTORY**

Debtor filed a voluntary petition for chapter 7 relief in November 2019.  Trustee timely commenced this adversary proceeding by filing a one-count complaint seeking turnover of alleged unpaid compensation owed by Defendants to Debtor.  (Compl., Dkt. No. 1).  The Court granted Defendants' motion to dismiss the initial complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), with leave to amend.  (*Order Granting Mots. to Dismiss*, Dkt. No. 30). Trustee then filed a ten-count amended complaint, which included state common law claims for breach of express contract (Counts III-IV), and, alternatively, breach of implied in fact contract (Counts V-VI), unjust enrichment (Counts VII-VIII), or quantum meruit (Counts IX-X).  (Am. Compl., Dkt. No. 31).  Counts I and II asserted that those causes of action belong to the estate. (*Id.*)

After another round of briefing, the Court dismissed Counts III through VI, in part, and allowed Counts I, II, VII, VIII, IX, and X to stand in their entirety.  (*Am. Order Granting In Part and Denying In Part Mot. to Dismiss*, Dkt. No. 51).  As the Court summarized in its order, "the amended complaint raise[d] two distinct bases for relief—Defendants paid Debtor too little, and Defendants paid Debtor nothing at all. . . . Counts III through VI—breach of express or implied in fact contract—fail to state a claim against Defendants for "not enough pay," but "failure to pay" is viable.  Counts VII through X—unjust enrichment or quantum meruit—can proceed against Defendants on both grounds."  (*Id.* at 5).  Specifically with respect to Counts III and IV,

2

the Court stated that the allegations were "sufficient to put Defendants on notice of each claim of breach arising from the time periods when Debtor worked for the respective entity and did not receive any corresponding compensation." (*Id.* at 7). As to Counts V and VI, the Court concluded that "the only plausible express or implied in fact contract theory Debtor can raise is failure to pay according to the agreement, not that what he ultimately received was inadequate." (*Id.* at 8). With the "not enough pay" theory excluded from Counts III through VI, Trustee proceeded to trial on the surviving portions of the amended complaint.

The Court held a combined trial in this turnover action and two related adversary complaints objecting to Debtor's discharge, from November 28-30, 2022.[2] (*Am. Final Pretrial Order*, Dkt. No. 81). The following witnesses offered testimony at the trial: (1) Debtor; (2) Debtor's ex-wife, Amanda Jeane Patterson ("A.J."); (3) Debtor's sister and the legal owner of Defendants, Audra Jentel ("Audra"); (4) Debtor's mother, Jane Miles ("Jane"); and (5) Richard Ehrenreich ("Ehrenreich"), who served as in-house and outside counsel to Defendants. At the conclusion of the trial, the parties were permitted to submit proposed findings of fact and post-trial briefs in lieu of closing arguments. (*Order Concluding Trial & Scheduling Post-Trial Briefing*, Dkt. No. 97). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), made applicable by Fed. R. Bankr. P. 7052.

---

[2] *Johnson v. Miles (In re Miles)*, Adv. Pro. No. 20ap00316, *Am. Final Pretrial Order*, Dkt. No. 79; *First American Bank v. Miles (In re Miles)*, Adv. Pro. No. 20ap00317, *Am. Final Pretrial Order*, Dkt. No. 55. References to the dockets in these related adversary proceedings will be to "Tr. Dkt. No." and "FAB Dkt. No.", respectively.

**FINDINGS OF FACT[3]**

The facts are derived from the pretrial stipulations, trial testimony, and admitted evidence. The Court also takes judicial notice of the dockets in the relevant bankruptcy case and the adversary proceedings. *See Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989).

## I.      **Debtor's Personal and Business History**

Debtor is a college graduate from a family with a history in the banking business. (Tr. 1 at 186:19-21).[4] Debtor branched out of banking and into real estate around 2004, but those ventures failed, leaving him with judgments totaling over $5 million hanging over his head by 2013. (Tr. 2 at 371:1-3). Not one to give up, Debtor then played a role in the formation and operation of several technology and financial services companies.

From 2012 through 2018, Debtor was involved with the following entities where he served as CEO: (1) Miles Technology Services LLC, which was later known as Black Stone Security LLC and is now known as Inventous LLC, (Tr. 2 at 381:1-18); (2) Goldfish Brain LLC, (Tr. 2 at 377:1-3); and (3) Amerbank LLC, which is now known as Dolare LLC (Tr. 2 at 401:1-23). Except for a brief period in 2012 when Debtor held a minority share in MTS, these companies were always owned on paper by Debtor's close relatives or by companies owned by Debtor's close relatives. (*See* Sept. 10, 2012 MTS Operating Agreement, Pl.'s Ex. 39 at 23; Nov. 19, 2012 MTS Operating Agreement, Pl.'s Ex. 40 at 27; Inventous Operating Agreement,

---

[3] Because the three proceedings involve the same evidence and the facts are intertwined, the additional findings of fact set forth in the joint memorandum opinion issued in the related section 727 proceedings identified in fn. 2, *supra*, are likewise adopted and incorporated into this ruling. *See* Tr. Dkt. No. 104; FAB Dkt. No. 76.

[4] All transcript references are to the transcripts of the trial held on November 28, 2022 ("Tr. 1"), November 29, 2022 ("Tr. 2"), and November 30, 2022 ("Tr. 3"), which were filed at Tr. Dkt. Nos. 92, 93, and 94, respectively.

Pl.'s Ex. 28 at 26; Tr. 1 at 50:12-16, 57:4-6; Tr. 3 at 465:14-23; Amerbank Operating Agreement, Pl.'s Ex. 27 at 24).

Specifically, Debtor's then-wife A.J. was sole owner of the companies starting in late 2012, and two years thereafter, she sold the entities to Debtor's sister Audra in late 2014 as part of her divorce settlement from Debtor. On multiple occasions since 2008, Debtor has admitted that it would be "illogical" to have assets in his name with creditors chasing him. (Tr. 2 at 382:15-19). From 2015 through 2018, the only active companies were Amerbank and Inventous, Amerbank's owner. Amerbank was in the business of facilitating transfers of money into the United States from outside the United States. (Tr. 3 at 394:25-395:2). At its height, Amerbank employed teams in the United States, Central America, and Europe, and held over $10 million in customer funds. Eventually, however, Amerbank halted operations sometime in 2018 after receiving multiple cease and desist letters from state government regulators because it lacked the proper licenses to conduct its business. (Tr. 3 at 556:20-23). Amerbank was later renamed Dolare LLC in late 2018. (Tr. 2 at 240:4, 401:1-3).

## II.     Debtor's Income/Compensation

Throughout the relevant period, Debtor received money from his family to pay for his living expenses. For a brief period in 2012 and 2013, Debtor earned a salary of approximately $75,000 from an unrelated company called Lets Corp. (Tr. 1 at 62:13-63:23; Tr. 3 at 466:7-15). Subsequently, despite providing services to Defendants, Debtor did not receive any payments directly from Defendants until 2018. All the while, however, Debtor received money routed from the companies through his family for personal use and reimbursement of business expenses. (Tr. 2 at 242:08-09, 244:06-09, 270:05-271:06). In 2018, Debtor received $27,800 from Dolare. (Tr. 3 at 422:11-423:8). Also in 2018, Debtor received approximately $4,200 from his mother, at least some of which had been transferred from Defendants' accounts. (Tr. 3 at 424:4-425:7). All

5

the while, Debtor lived in the United States, visited Europe, and traveled around the Caribbean, on behalf of Defendants. (Tr. 1 at 194:2-7; Tr. 2 at 254: 14-17; Tr. 3 at 560:15-16, 563:11-13, 578:3-15).

Debtor and Audra testified that there was no agreement for his compensation. (Tr. 1 at 203:7-13; Tr. 3 at 515:2-16, 539:21-540:3). Beyond that, Audra and Debtor recall that he refused compensation and intended to provide services gratuitously. (Tr. 1 at 203:14-22; Tr. 3 at 515:2-16, 538:25-539:14, 540:23-541:6). Debtor testified that he might have been motivated to provide services for free, in part, due to his guilt over losing over $900,000 Audra had invested in his unsuccessful real estate businesses. (Tr. 1 at 203:7-22, 203:23-205:23; Tr. 3 at 541:15-23). He also admitted, though, that "it would be great to receive compensation" if ever the company were successful, his sister paid back, and his family financially healthy. (Tr. 3 at 540:14-18). Defendants do not dispute that Debtor received a small salary as an employee of Amerbank in 2018 but maintain that it was paid unilaterally by Audra in order to get Debtor on the health insurance plan. (Tr. 1 at 166:2-11, 206:2-19, 206:2-19; Tr. 3 at 567:13-22).

## JURISDICTION

The Court has jurisdiction over this matter under 11 U.S.C. § 1334, 28 U.S.C. § 151, and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Specifically, Counts I and II fall within the Court's purview because the determination of whether a cause of action is property of the estate "arises under" section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 1334(b); *see also Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir. 2010) (describing "arising under" claims as those "which depend on a right 'created or determined by a statutory provision of title 11[.]'") (citations and internal quotes omitted). The remaining counts are "related to" the bankruptcy

case in that the dispute in each cause of action "affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re FedPak Sys.*, 80 F.3d 207, 213-14 (7th Cir. 1996) (citation omitted).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O). To the extent that this matter involves any non-core proceedings, the parties have consented to the Court's jurisdiction.[5]  (*See, e.g.,* Am. Compl., Dkt. No. 31, ¶ 11; Ans., Dkt. No. 52, ¶ 11).

## **DISCUSSION**

At issue here is whether a chapter 7 trustee tasked with administering a debtor's bankruptcy estate is entitled to recover unpaid compensation for services the debtor provided to businesses before filing.  In most cases, the answer would be yes.  In this case, however, the answer is no because Trustee failed to prove that there was an agreement for compensation, or that the services had not been provided gratuitously, or what the services were worth.

## I.      **Property of the Estate (Counts I & II)**

Counts I and II of the amended complaint seek a determination from the Court that certain legal claims for unpaid compensation against Defendants are property of the estate.  (Am. Compl., Dkt. No. 31 at 9, 10).  Because Debtor would have been entitled to pursue the claims before the case was filed, they are property of the estate; thus, Trustee is now entitled to pursue them.  But the claims are just that—claims—and like any other plaintiff, Trustee must satisfy her burden of proof to prevail.

The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).

---

[5]  In addition to Trustee's allegation and Defendants' admission that this is a core proceeding, consent is implied based on the parties' conduct. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 684 (2015).

The scope of section 541 is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983). "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014). The existence and extent of such interests is generally defined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979).

Legal claims are among the interests that comprise property of the estate. *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 598 (7th Cir. 2012) ("Section 541(a) provides that an estate in bankruptcy includes all of the debtor's 'property', a word that comprises legal claims such as the one against [the defendant]."); *Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229, 234 (Bankr. N.D. Ill. 2005) (property of the estate includes "claims and causes of action belonging to the debtor") (citations omitted).

Property of the estate may include causes of action for unpaid compensation such as a potential breach of contract claim. *See, e.g., Gorokhovsky v. Ocheretner (In re Gorokhovsky)*, Nos. 17-28901-beh, 17-2360, 2018 Bankr. LEXIS 2500, at *10 (Bankr. E.D. Wis. Aug. 20, 2018) ("When [the debtor] filed his bankruptcy petition, his potential breach of contract cause of action became an asset of the bankruptcy estate."); *Wood v. Green (In re Wood)*, No. 3:07cv95/MCR/EMT, 2008 U.S. Dist. LEXIS 60265, at *12 (N.D. Fla. Aug. 4, 2008) (chapter 7 trustee, not debtor, had standing to assert breach of contract claims for earnings derived from debtor's pre-petition services to defendants because such earnings were property of debtor's bankruptcy estate). To the extent that a cause of action is property of the estate, the trustee has standing to commence and prosecute the claim. Fed. R. Bankr. P. 6009; *Lightspeed Media Corp.*

*v. Smith*, 830 F.3d 500, 505 (7th Cir. 2016) ("In liquidation proceedings, only the trustee has standing to prosecute or defend a claim belonging to the estate").

Trustee's position in this case is straightforward.  It is undisputed that Debtor provided services to Defendants, and Defendants did not compensate Debtor monetarily for some of those services.  Therefore, according to Trustee, any legal claim arising from such nonpayment is property of the estate.  Defendants disagree and generally state that they produced evidence that the claims are not part of the estate. (Defs.' Post-Trial Br., Dkt. No. 102-1 at 13).  In addition, Defendants characterize Counts I and II as "predicate to the true claims" and "expressly reliant upon claims the Debtor purportedly holds against the Defendants."  (Dkt. No. 102-1 at 2).  To that end, Defendants maintain that Trustee's claims are limited to only such claims as Debtor may hold, subject both to Debtor's actions and any available defenses.  (*Id.*)  In this regard, Defendants appear to at least concede that Trustee would be entitled to pursue any potential claims held by Debtor when the case was filed.

Based on the testimony of several witnesses at trial and various documents admitted into evidence, it is beyond dispute that Debtor provided services to Defendants, some of which were compensated, some of which were not.  (*See, e.g.,* Tr. 1 at 89:12-13, 121:21-122:15; Tr. 3 513:18-514:3, 540:23-541:6, 560:8-21 (services provided), Tr. 3 at 567:3-9 (compensated), & Tr. 1 at 203:7-16 (uncompensated)).  Those facts gave rise to potential legal claims for unpaid compensation Debtor could have asserted against Defendants before the filing of this case.  Of course, because those claims had not been pursued or reduced to judgment, they were speculative, unliquidated, and subject to applicable burdens of proof and defenses.[6]

---

[6] *See, e.g.*, *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 871 (4th Cir. 1991) ("A cause of action, of course, is an asset that is not easily valued because there is no market where it is bought and sold. Thus, prior to

Accordingly, the facts established at trial are sufficient to give rise to claims against Defendants for unpaid compensation, which are property of the estate.  Judgment will therefore be entered in Trustee's favor on Counts I and II of the amended complaint.  The causes of action alleged in Counts III-X are property of the estate under 11 U.S.C. § 541(a).  Whether Trustee presented evidence sufficient to prevail on the claims is another matter.  *See Holstein*, 321 B.R. 229, 234 n.3 (Bankr. N.D. Ill. 2005) (distinguishing between the question of whether a cause of action is property of the estate and whether it has merit) (citing *Alipour v. Thomas (In re Alipour),* 252 B.R. 230, 235 (Bankr. M.D. Fla. 2000) (noting that determination of whether legal claim was property of the estate "in no way" amounted to a decision on the merits)).

## II.      Trustee's Failure to Offer Proof of Damages (Common to Counts III-X)

As explained in each section below, Trustee is not entitled to judgment on Counts III through X because the burden of proof has not been satisfied as to various elements of each claim.  Before addressing each claim, however, a defect common to all the counts warrants discussion.

To prevail on any of the claims set forth in Counts III through X, Trustee was required to put on evidence of damages.  *See Shore v. Motorola, Inc.*, No. 94 C 5890, 1997 U.S. Dist. LEXIS 1559, at *52 (N.D. Ill. Feb. 5, 1997) ("In a breach of contract action, the plaintiff 'must precisely establish the damages he suffers thereby.'") (quoting *Rohter v. Passarella*, 246 Ill. App. 3d 860, 867 (1st Dist. 1993)); *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61 ("To recover [for *quantum meruit*], the service performed by the plaintiff must be 'of some measurable benefit to the defendant.'") (quoting *Van C. Argiris & Co. v. FMC*

---

judgment, a cause of action's value is unliquidated and contingent, and claiming a specific dollar exemption is, at best, speculation.").

*Corp.*,144 Ill. App. 3d 750, 753 (1st Dist. 1986)); *Bd. of Managers v. Green Trails Improvement Ass'n*, 404 Ill. App. 3d 184, 193-94 (2d Dist. 2010) ("Damages in an unjust-enrichment claim are restitution measured by the defendant's gain, not the plaintiff's loss.") (citing *Raintree Homes, Inc. v. Village of Long Grove,* 209 Ill. 2d 248, 257-58 (2004)). Thus, as a predicate to any relief in this matter, Trustee needed to present evidence of damages.

On this point, Trustee's post-trial brief generally references damages once, (Pl.'s Post-Trial Br., Dkt. No. 100 at 5), and then concludes that "Trustee is entitled to a judgment against the Entity Defendants in an amount to be determined at a prove up hearing." (*Id.* at 9). Trustee is mistaken. The Court will not hold a separate prove-up hearing on damages. The time to present all evidence, including on damages, was during the scheduled trial.

Trustee commenced this matter by filing the original complaint on October 27, 2020. (Dkt. No. 1). The matter proceeded through the pleading stage, motion practice, discovery, and a three-day trial. After the testimony of witnesses had ended, exhibits were admitted into evidence, and the parties rested their cases, the Court closed the record and concluded the trial. (Tr. 3 at 612:16-19; Dkt. No. 97). At no time prior to or during the trial was a separate prove-up hearing on damages requested by Trustee. Accordingly, the Court will consider whatever admissible evidence of damages was presented at trial.

For purposes of the claims at issue here, relevant evidence of damages would need to be the amount of compensation Debtor supposedly would have been entitled to under the purported contract, the value of services provided by Debtor, and the value of benefits received and retained by Defendants. One of the few pieces of evidence that Trustee sought to introduce was an internal company memorandum drafted by attorney Ehrenreich which was characterized by Trustee as containing an opinion as to an appropriate salary for Debtor. The document had been

11

inadvertently turned over and filed on the docket in prior litigation between the parties.  After

Debtor objected to the disclosure, the presiding District Judge found that the memorandum was a

privileged communication and therefore ordered that it be stricken and sealed, with all copies

returned to Amerbank.  During the trial in this matter, the Court also found that the document

was protected by the attorney-client privilege and thus inadmissible.[7]

In this case, Ehrenreich testified that "the recommendation [he] made in the memo was

deeply connected to a legal issue[.]"  (Tr. 2 at 356:13-15).  Shedding light on this statement, the

district court order states that the paragraph of the memorandum at issue discusses the

accounting of a transfer of funds as Debtor's salary.  (Dkt. No. 75, Ex. 2, *Southport Bank v.

Miles*, 10-cv-08321, ECF No. 652, at 3 (N.D. Ill. Apr. 16, 2019)).  There, Ehrenreich explained

that the "memorandum simply contain[ed] a suggestion of how the company could treat the

transfer."  (*Id.*)  Based on Ehrenreich's testimony in this case and the district court's description

of the relevant part of the memorandum, it is unclear how or why the suggestion in that

memorandum would be a proper measure of damages, if warranted.  Accordingly, even if the

document had been admitted, it would have had little or no probative value as to damages.

In short, critical evidence pertaining to damages is lacking here.

**III.    Breach of Express Oral Contracts (Counts III & IV)**

Through Counts III and IV, Trustee seeks judgments against Inventous and Amerbank,

respectively, for breach of express oral contracts with Debtor.  Because Trustee did not satisfy

---

[7] Although it is unnecessary to do so, the Court notes that it could take judicial notice of the dollar amount because it is included in the district court order, which is filed on the public docket both in this proceeding and the district court case.  *Fin. Partners*, 116 B.R. at 635 ("The federal courts have authority to take judicial notice of proceedings in other courts, either within or without the federal system, provided that those proceedings are directly related to matters presently at issue.").

the burden of proof by presenting sufficient evidence to establish the elements of a breach of oral contract claim under Illinois law, Counts III and IV fail.

To prevail at trial on a breach of contract claim under Illinois law, a plaintiff must demonstrate: "(1) the existence of a valid and enforceable contract; (2) substantial performance by [the plaintiff]; (3) a breach by defendants; and (4) resultant damages." *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016) (citing *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (applying Illinois law)); *see also Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68 (citing *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 30). The plaintiff has the burden of establishing each element by a preponderance of the evidence. *Edgewater Med. Ctr. v. Edgewater Prop. Co. (In re Edgewater Med. Ctr.)*, 373 B.R. 845, 856 (Bankr. N.D. Ill. 2007) (citing *Van Der Molen v. Washington Mut. Finance, Inc.,* 359 Ill. App. 3d 813 (1st Dist. 2005)).

"A valid and enforceable contract requires an offer, an acceptance, and consideration." *Id.* (citing *CNA Int'l, Inc. v. Baer*, 2012 IL App (1st) 112174, ¶ 45); *Tindall Corp. v. Mondelez Int'l, Inc.*, 248 F. Supp. 3d 895, 904 (N.D. Ill. 2017) ("Oral contracts are subject to the same requirements of contract formation as written ones—there must be an offer, an acceptance, and consideration.") (citing *Sheth*, 2013 IL App (1st) 110156 ¶ 68). To enforce a contract under Illinois law, the terms must be sufficiently definite and certain to ascertain what the parties have agreed to. *See Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849-52 (7th Cir. 2007) (citing Illinois law); *Kraftco Corp. v. Koblus,* 1 Ill. App. 3d 635 (4th Dist. 1971); *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.,* 51 Ill. App. 3d 11, 14 (3d Dist. 1977). Where the parties present conflicting evidence regarding the existence of an oral contract, the trier of fact may reasonably conclude that no such contract exists. *Sheth*, 2013 IL App (1st) 110156, ¶ 72

(affirming jury verdict against plaintiff for breach of oral contract claim because, "[g]iven the conflicting evidence regarding the existence of an oral contract, the jury's verdict against plaintiffs and in favor of defendants . . . was not against the manifest weight of the evidence.").

In addition, "[t]he basic theory of damages in a breach of contract action requires that a plaintiff 'establish an actual loss or measurable damages resulting from the breach in order to recover.'" *In re Ill. Bell Tel. Link-Up II*, 2013 IL App (1st) 113349, ¶ 19 (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill 2d 100, 149 (2005)). "The proper measure of damages for a breach of contract is the amount [of] money necessary to place the plaintiff in a position as if the contract had been performed." *Id.* The plaintiff bears the burden of establishing a reasonable basis for computation of damages for breach of contract under Illinois law. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632 (7th Cir. 2007); *see also Ellens v. Chi. Area Office Fed. Credit Union*, 216 Ill. App. 3d 101, 106 (1st Dist. 1991) ("It is well established that it is the plaintiff's burden not only to establish that he sustained damages, but he must also establish a reasonable basis for computation of those damages."). Failure to present sufficient proof of damages at trial, like any other element of a claim, may preclude a plaintiff from recovery. *Tankson v. Yao, Ltd. (In re Tankson)*, 91 A 00289 (90 B 21817), 1991 Bankr. LEXIS 1267, at *31 (Bankr. N.D. Ill. Aug. 28, 1991).

Trustee argues that the existence of a contract has been established because the testimony of Debtor and his family members about his employment relationship with Defendants was not forthright, "it is clear that [Debtor] had an oral understanding to be compensated[,]" and the fact that Debtor was paid is anecdotal evidence of an express agreement. (Dkt. No. 100 at 4). As to the elements of Debtor's performance and Defendants' breach, Trustee points out that it is undisputed that Debtor provided services and Defendants did not pay him for some of those

14

services.  (*Id.* at 5).  Last, Trustee claims that damages have been established because Debtor did not receive income, which resulted in his inability to pay debts and bankruptcy filing.  (*Id.*) Defendants emphatically respond that Trustee presented no evidence to support the existence of a contract and that the evidence elicited at trial tended to show the contrary.  Specifically, Defendants point to Debtor and Audra's denials of having ever negotiated or agreed to any compensation for Debtor.  According to Defendants, the evidence shows that Debtor did not intend to receive any compensation for his services, and he was essentially ignorant to the source of any income he did receive.

Although the Court questions the veracity of testimony provided by Debtor and his family members concerning compensation, the flaws in Trustee's arguments cannot be overlooked.  Trustee simply failed to cite any supporting evidence from the record.[8]  Indeed, the Court found little to no evidence of an express, oral contract for compensation between Debtor and Defendants.  The essential components that give rise to a contract—offer, acceptance, consideration, and definite terms—are missing from the testimony and exhibits.  The two strongest pieces of evidence in favor of the existence of a contract are the undisputed facts that Debtor provided services to Defendant, and Defendants paid some compensation to Debtor.  But services and payments alone do not give rise to a contract.  The services and payments must have been provided in exchange for each other—a fact that was not established by Trustee.  To conclude that a contract had been formed would require the Court to speculate and draw many inferences as to the interactions of Debtor and his family members that have no foundation in the

---

[8]  The portion of Trustee's post-trial brief does not refer to any proposed findings of fact. (Dkt. No. 100 at 4-5).  Presumably, the relevant proposed findings are those relating to unpaid compensation at ¶¶ 27-31. (Dkt. No. 98 at 11).  Those paragraphs, however, do not cite the record.  Instead, they cite the Court's earlier order on Defendants' motion to dismiss.  That is neither relevant nor admissible evidence.

record.  There is simply no proof of an offer being made and accepted or an exchange of services for pay, let alone definite terms concerning the purported agreement.  After years of litigation and a three-day trial, the Court is left without answers to many core questions: Who made the offer?  When was it made and accepted?  What were the terms?  These faults cause the Court to conclude that Trustee did not meet her burden and is not entitled to judgment.

Even if Trustee had shown that a contract existed, the claim would still fail because there is insufficient evidence of damages.  Beside the general notion that Debtor was not paid and therefore rendered unable to pay debts and forced into bankruptcy, no evidence of damages was offered.  Such a notion may be sufficient to survive a dismissal motion, but it is not enough to prevail at trial.  A plaintiff is required to prove, not only that damages were suffered, but also a way to measure or compute the amount of such damages.  No such evidence or argument was presented.

For these reasons, the Court concludes that Trustee has failed to meet the burden of proof on her claims for breach of oral contract against Defendants as to the essential elements of the claim.

## IV.     <u>Breach of Contract Implied in Fact (Counts V & VI)</u>

Under Counts V and VI, Trustee seeks judgments against Defendants for breach of contract implied in fact, but these claims suffer from the same fundamental defects as the claims based in express contract.  There is insufficient evidence of the essential elements of a breach of contract claim.  Just as Trustee was unable to point to words that formed the basis of an express contract, she did not point to conduct that supplied all the components of an enforceable implied contract.  Similarly, there is no proof that Debtor suffered any damages, let alone how to measure any damages suffered.

16

"Even in the absence of an express contract, an implied contract can be created as a result of the parties' actions." *Trapani Constr. Co. v. Elliot Grp., Inc.*, 2016 IL App (1st) 143734, ¶ 41 (citing *Kohlenbrener v. North Suburban Clinic, Ltd.*, 356 Ill. App. 3d 414, 419 (1st Dist. 2005)). A contract implied in fact arises from a promissory expression inferred from facts and circumstances that demonstrate the parties' intent to be bound. *Id.* (citing *Heavey v. Ehret*, 166 Ill. App. 3d 347, 354 (1st Dist. 1988). "Thus, '[t]he only difference between an express contract and an implied contract in the proper sense is, that in the former the parties arrive at an agreement by words, either verbal or written, while in the latter the agreement is arrived at by a consideration of their acts and conduct.'" *Id.* (quoting *Litow v. Aurora Beacon News*, 61 Ill. App. 2d 127, 133 (2d Dist. 1965) (internal quotation marks omitted)).

A contract implied in fact is a true contract, which contains all the elements of an express contract, including offer, acceptance, consideration, and a meeting of the minds. *Id.* ¶ 42 (citing *Matthews v. Chi. Transit Auth.*, 2016 IL 117638, ¶ 93; *Brody v. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 298 Ill. App. 3d 146, 154 (2d Dist. 1998)). By definition, a contract implied in fact will not involve an express written or oral meeting of the minds, so intent to contract can be proven by the circumstances, general course of dealing between the parties, and common understanding. *Id.* ¶ 43 (citing *Schivarelli v. Chi. Transit Auth.*, 355 Ill. App. 3d 93, 101 (1st Dist. 2005); *People ex rel. Hartigan v. Knecht Servs., Inc.*, 216 Ill. App. 3d 843, 851 (2d Dist. 1991)); *In re Estate of Milborn*, 122 Ill. App. 3d 688, 690 (3d Dist. 1984); *Arthur Rubloff & Co. v. Drovers Nat'l Bank*, 80 Ill. App. 3d 867, 873 (1st Dist. 1980)). In this regard, "in order to recover on an implied contract, the facts and circumstances must show that, at the time the services were rendered, one party expected to receive payment and the other party intended to make payment." *Zadrozny v. City Colleges of Chi.*, 220 Ill. App. 3d 290, 296 (1st Dist. 1991)

(citing *Campion v. Tennes* 93 Ill. App. 3d 597 (1st Dist. 1981)).  As to damages, "[w]hile absolute certainty is not required, the plaintiff must prove damages with reasonable certainty without resort to conjecture or speculation.  *Ill. Bell*, 2013 IL App (1st) 113349, ¶ 19.

It is difficult to ascertain Trustee's position on these counts because of several apparent errors in this section of Trustee's post-trial brief.  (Dkt. No. 100 at 5-6).  Trustee begins by correctly articulating general rules concerning contracts implied in fact but goes on to cite the pleading standard for a claim based on a contract *implied in law* (not implied in fact).  (*Id.* at 6).  Trustee then applies that incorrect standard to the facts without ever citing the record or referring to any proposed findings of fact.  (*Id.*)  At most, the Court can deduce that the Trustee believes Debtor's and Defendant's conduct "ma[d]e clear that the Debtor was to be paid."  (*Id.* at 6).

Defendants, on the other hand, articulated a more cogent argument.  They first direct the Court's attention to testimony in which Debtor and Audra disclaimed any intent to create an agreement.  This lack of intent, according to Defendants, is supported by the parties' conduct. Contemporaneous documents showed that Amerbank generally contracted with other officers (but not Debtor).  Payments from Debtor's mother were sporadic and irregular in their timing and amount, and Defendants maintain that the funds were primarily for reimbursement of business-related travel expenses.  Even when Debtor received a formal salary, Defendants explained that away as a unilateral decision of Audra concerned with maintaining health insurance for her brother.  According to Defendants, this conduct is not indicative of intent to be bound to a contract for compensation.  Furthermore, like the express contract claims, Defendants attack Trustee's failure to put on any evidence of the amount purportedly due under the supposed contract, much less any way to calculate damages.[9]

---

[9] Defendants also argue that Trustee failed to prove Debtor's performance because he essentially stopped providing services in late 2017 and early 2018.  The evidence on this point was conflicting, however, with testimony

18

Again, although the Court gives little credence to the self-serving testimony of Debtor and his family members, none of the other evidence demonstrates a meeting of the minds between Debtor and Defendants.  The only expression of any intent to be paid at some point for Debtor's services was his admission that "it would be great to receive compensation" if ever the company were successful, his sister paid back, and his family healthy financially.  On the other side, Defendants' only expressed motivation for paying Debtor was Audra's desire to maintain health insurance coverage for her brother.  These vague, speculative, conditional, and ulterior notions held separately by Debtor and Defendants concerning compensation are not enough to constitute a meeting of the minds for purposes of forming a contract.  Nor does any of the other evidence provide definite or certain terms concerning the purported services or payment.

As with an express contract, a contract implied in fact must be supported by an offer, acceptance, consideration, a meeting of the minds, and definite and certain essential terms.  The evidence presented at trial does not allow the Court to conclude that any of these elements have been satisfied.  The testimony and documentary evidence certainly showed that Debtor was involved with Defendants' operations, but the scope of "services" he would have been required to provide under a hypothetical contract remains unclear.  Similarly, although Debtor received a paycheck for a short period of time and had access to company funds through his mother's account, Trustee failed to present a coherent theory as to the amount of compensation to which Debtor was "entitled" to receive under the purported contract.  Because of these deficiencies, the

that Debtor was gone and unreachable, but some evidence suggested otherwise.  (*Compare* Tr. 1 at 199:15-23; Tr. 2 at 282:25, 312:02-09 *with* Pl.'s Ex. 22 (Mar. 7, 2018 email stating that "Charlie just messaged me . . ."); Pl.'s Ex. 30 (Jan. 12, 2018 letter signed by Debtor); Pl.'s Ex. 39 (Feb. 20, 2018 email stating that "Charlie asked me to…"; Tr. 2 at 313:1-5).  Overall, the evidence was insufficient to decide that Debtor stopped providing services to the companies for any material period of time.

Court is unable to conclude that Debtor's and Defendants' conduct gave rise to a meeting of the minds as to services and compensation.

Even if Trustee had established all the other elements of breach of contract implied in fact, the claim would still fail because there was insufficient proof of damages. If a plaintiff complaining of breach of contract fails to prove damages, the court must rule in favor of the defendant. *Ill. Bell*, 2013 IL App (1st) 113349, ¶ 19. Trustee argued Debtor suffered damage by losing out on income that resulted in the inability to pay debts and eventually filing of bankruptcy. As discussed above, allegations to that effect may be sufficient to survive a dismissal motion, but they are not enough to obtain a judgment. Due to the lack of evidence on the existence and method for computing damages, the Court would be unable to enter a judgment in Trustee's favor on these claims without resorting to conjecture or speculation. *See id.* Except for the confidential memorandum discussed above, the Court heard no evidence or arguments concerning the amount of compensation Debtor was supposedly entitled to receive under any contract. As such, Trustee has not met the burden of proof for the breach of contract implied in fact claims, and judgment will be entered in Defendants' favor on Counts V and VI.

**V.      Unjust Enrichment & Quantum Meruit (Contract Implied in Law) (Counts VII-X)**

To succeed on Counts VII through X, Trustee needed to prove that Debtor did not provide services to Defendants gratuitously, along with the value of services provided by Debtor, and the value of benefits retained by Defendants. Because Trustee failed to adequately address those issues, Defendants are entitled to judgment on these counts.

In addition to contracts implied in fact, Illinois recognizes contracts implied in law. *Trapani*, 2016 IL App (1st) 143734, ¶ 41 (citing *Brody*, 298 Ill. App. 3d at 154). "A contract implied in law is equitable in nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense." *Milborn*, 122 Ill. App. 3d at 690. "Contracts

implied in law (quasi-contracts) arise notwithstanding the parties' intentions, result from a duty imposed by law, and are contracts merely in the sense that they are created and governed by principles of equity." *Zadrozny*, 220 Ill. App. 3d at 295 (citing *Steinberg v. Chi. Med. School*, 69 Ill. 2d 320, 334 (1977)). "No claim on a contract implied in law can be asserted if an express contract or a contract implied in fact exists between the parties and concerns the same subject matter." *Zadrozny*, 220 Ill. App. 3d at 295 (citing *Heavey*, 166 Ill. App. 3d 347 (quoting *Bd. of Dir. of Carriage Way Prop. Owners Ass'n v. W. Nat'l Bank*, 139 Ill. App. 3d 542, 547 (1st Dist. 1985))). Claims based on the theory of a contract implied in law are sometimes referred to as claims for quantum meruit, quasi-contract, or unjust enrichment. *Marcatante v. City of Chi.*, 657 F.3d 433, 442 (7th Cir. 2011) (citing *Yugoslav-Am. Cultural Ctr., Inc. v. Parkway Bank & Trust Co.*, 327 Ill. App. 3d 143 (1st Dist. 2001)).

The doctrines of unjust enrichment and *quantum meruit* apply where one party provides a service that benefits another, the benefiting party accepts the benefit, and the circumstances show that the services were not intended to be provided gratuitously. *Vill. of Clarendon Hills v. Mulder*, 278 Ill. App. 3d 727, 735 (2d Dist. 1996). To prevail on a claim for unjust enrichment under Illinois law, a plaintiff must show that: (1) the defendant unjustly retained a benefit, (2) the retention of such benefit was to the plaintiff's detriment, and (3) the "defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145 (1989)). "To recover under a *quantum meruit* theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) defendant accepted this service, and (4) no contract existed to prescribe payment for this service." *Installco Inc. v.*

21

*Whiting Corp.*, 336 Ill. App. 3d 776, 781 (1st Dist. 2002).  "Absent a showing of an express or

implied in fact contract for payment, the services among family members are presumed to be

gratuitous."  *Milborn*, 122 Ill. App. 3d at 692.  "Parties who perform services altruistically or

gratuitously, with some end other than payment in mind, cannot recover *quantum meruit;* with

no expectation of payment for services rendered, a party can hardly claim that another has been

*unjustly* enriched."  *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.,* 907 F.2d 732, 740 (7th

Cir. 1990).

The key distinction between *quantum meruit* and unjust enrichment is in the measure of

damages or recovery.  "In a *quantum meruit* action, the measure of recovery is the reasonable

value of work and material provided, whereas in an unjust enrichment action, the inquiry focuses

on the benefit received and retained as a result of the improvement provided by the contractor."

*Hayes Mech., Inc. v. First Indus., Ltd. P'ship*, 351 Ill. App. 3d 1, 9 (1st Dist. 2004).  "Damages

in an unjust-enrichment claim are restitution measured by the defendant's gain, not the plaintiff's

loss."  *Green Trails*, 404 Ill. App. 3d at 193-94 (citing *Raintree Homes,* 209 Ill. 2d at 257-58).  In

contrast, in a *quantum meruit* claim, damages are measured by the value of benefits conferred.

*See O'Neil & Santa Claus*, 51 Ill. App. 3d at 15 (affirming trial court's conclusion that "there

was insufficient evidence introduced by plaintiff as to what the services allegedly performed by

plaintiff were reasonably worth"); *see also Sys. Dev. Integration, LLC v. Comput. Scis. Corp.*,

886 F. Supp. 2d 873, 880 (N.D. Ill. 2012) (excluding expert's opinion as to the value of benefits

retained because it was "too speculative to be admissible").

Although the parties each make arguments about various elements of the unjust

enrichment and *quantum meruit* claims, the two issues at the center of the dispute are (1) whether

Debtor provided services to Defendants gratuitously and (2) value of benefits retained by Defendants (unjust enrichment) or the value of services provided by Debtor (*quantum meruit*).

As to the nature of the benefits conferred, Trustee acknowledges that Debtor testified about providing services to Defendants gratuitously.  According to Trustee, this testimony was self-serving and contradicted by the fact that Debtor was indeed paid at times and Debtor's admission that he expected to be paid.  The Court agrees that Debtor's testimony was self-serving in this regard and therefore gives it little weight.  As to Trustee's other arguments, however, the Court disagrees with Trustee's characterization.  First, the fact that Debtor received some payments from Defendants does not necessarily contradict Debtor's assertion that his services were gratuitous.  There were plausible alternative explanations for the payments provided that were not disproved by Trustee.  For example, some of the funds received by Debtor were reimbursements for expenses, some were paid so that Debtor would have health insurance, and others were gratuitous contributions from Debtor's mother.  Although the Court questions whether these explanations are the whole truth, Trustee failed to put on sufficient evidence to the contrary.

Second, Debtor's statement that "it would be great to receive compensation" if ever the company were successful, his sister paid back, and his family healthy financially is simply not an admission that he expected to be paid, as Trustee suggests.  Furthermore, Trustee has not rebutted Defendants' argument that services provided by one family member to another are presumed to be gratuitous absent an express or implied in fact contract for compensation.[10]  Even

---

[10]  It is worth noting that the services in the case were not provided directly from one family member to another, but through artificial business entities.  Although treating a relationship as a business transaction can cut against the presumption that services to family are gratuitous, *see Sherman v. Whiteside*, 190 Ill. 576, 581 (1901), Trustee has failed to make any such argument here, so the point is forfeited. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotations omitted).

without Debtor's self-serving testimony, the presumption arises under the facts here and is enough to defeat Trustee's unjust enrichment and *quantum meruit* claims. *Midcoast Aviation,* 907 F.2d at 740.

Regardless of the nature of Debtor's services, Trustee's unjust enrichment and *quantum meruit* claims fail due to a lack of evidence on the value of the services provided and benefits received. At least some evidence on the scope of services rendered and rate of pay for such services must be presented to prevail on a claim based on a contract implied in law. *See, e.g., O'Neil & Santa Claus*, 51 Ill. App. 3d at 15 ("The manifest weight of the evidence supports the trial court's conclusion that there was insufficient evidence introduced by plaintiff as to what the services allegedly performed by plaintiff were reasonably worth in order to recover under a theory of *quantum meruit*."). Here, the funds available to or otherwise paid to Debtor appear to have been varying and sporadic, as were the scope and extent of his services. Without better evidence of the extent and value of the services provided by Debtor and rendered to Defendants, Trustee cannot prevail on the *quantum meruit* claim.

Similarly, the Court cannot rule in Trustee's favor without evidence of the value of the benefits received and retained by Defendants as a result of Debtor's services. Although Trustee generally argues that Debtor conferred benefits by providing services for several years, obtaining an investment for the company, and contributing to the operation of a company that at one point held more than $10 million in client funds, there was no evidence of any benefit received by Defendants from those circumstances. In fact, if the fate of Defendants is a proper measuring stick, then no benefit was conferred. As discussed above, Trustee's opportunity to put on evidence of damages, including the value of services provided or benefits received, was at trial. No separate prove-up hearing will be held.

24

Accordingly, Trustee's claims based on contract implied in law fail due to a lack of adequate evidence on the value of services provided and benefits received.  In addition, Trustee failed to rebut the presumption that Debtor provided services to his family businesses gratuitously.  For the foregoing reasons, judgment will be entered in Debtor's favor on Counts VII-X.

## VI.    Affirmative Defenses

"An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 1003 (N.D. Ill. 2018) (quoting *Rimer v. Chase Bank USA, N.A.*, 274 F.R.D. 637, 639 (N.D. Ill. 2011)).  Because Trustee failed to satisfy her burden of proof on any of the substantive claims in the amended complaint, Defendants' affirmative defenses are moot and need not be addressed.

## CONCLUSION

For the reasons stated above, judgment will be entered for Trustee and against Defendants on Counts I and II and for Defendants and against Trustee on Counts III-X.  A separate judgement, consistent with this Memorandum Opinion, will be entered pursuant to Federal Rule of Bankruptcy 9021.

DATED:  May 24, 2023                                    ENTERED:

_LaShonda A. Hunt_____

Honorable LaShonda A. Hunt
United States Bankruptcy Judge